UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————————————x

RAFAEL RODRIGUEZ,

                Petitioner,

    -against-

UNITED STATES OF AMERICA,

                Respondent.
——————————————————————————————x

20 CV 3928 (CM)
S4 07 CR 387-04 (CM)


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————————————x

JORGE CEDENO,

                Petitioner,

    -against-

UNITED STATES OF AMERICA,

                Respondent.
——————————————————————————————x

12 CV 7363 (CM)
S4 07 CR 387-09 (CM)


### DECISION AND ORDER ON DEFENDANTS' PERMITTED SECOND SUCCESSIVE MOTIONS TO VACATE PURSUANT TO TITLE 28 U.S.C. § 2255

McMahon, J.:

On November 8, 2007, Rafael Rodriguez, Jorge Cedeno and five co-defendants were charged in an eight-count superseding indictment (S4 07 CR 387 (CM)), with various conspiracy, robbery and kidnapping crimes. (Dkt. 29). These charges arose out of a string of armed robberies wherein Rodriguez, Cedeno and their co-defendants held up truck drivers who were carrying valuable cargo.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/26/21

Count One charged Rodriquez and Cedeno with kidnapping conspiracy, in violation of Title 18, United States Code, Section 1201(c). Count Two charged Rodriguez with kidnapping, in violation of Title 18, United States Code, Section 1201(a)(1). Count Three charged Rodriguez and Cedeno with kidnapping. Count Four charged Rodriguez and Cedeno with conspiracy to commit Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951(a). Count Five charged Rodriguez with substantive Hobbs Act Robbery, in violation of Title 18 United States Code, Section 1951(a). Count Six charged Rodriguez and Cedeno with substantive Hobbs Act Robbery.

Count Seven charged Rodriguez with brandishing a firearm during a crime of violence, in violation of Title 18, United States Code, Section 924(c); specifically, the "crimes of violence" named in Count One (the Kidnapping Conspiracy), Count Two (Kidnapping committed on September 13, 2006), Count Four (Hobbs Act Robbery Conspiracy), and Count Five (Hobbs Act Robbery committed on September 13, 2006).

Count Eight charged Rodriguez and Cedeno with brandishing a firearm during a crime of violence; specifically, the "crimes of violence" charged in Count Three (Kidnapping committed on November 13, 2006), and Count Six (Hobbs Act Robbery committed on November 13, 2006).

On July 1, 2008, a jury convicted Rodriguez and Cedeno on all counts. On April 27, 2008, the Court sentenced both defendants:

Cedeno to a total of 319 months' imprisonment— 235 months to run concurrently on each of Counts One, Three, Four, and Six, and 84 months on Count Eight, to run consecutive to the sentences imposed on all other sentences. *See* Judgment (Dkt. 155); and

Rodriguez to 660 months' imprisonment— 360 months to run concurrently on each of Counts One, Two and Three, to run concurrent with concurrent 240 months on each of Counts

Four, Five, and Six, and 300 months on Count Eight, to run consecutive to the sentences imposed

on all other counts.[1] *See* Judgment (Dkt. 157).

In May 2011, the Second Circuit affirmed the convictions for Rodriguez and Cedeno in

one opinion. *See United States v. Cedeno*, 437 F. App'x 8 (2d Cir. 2011). (Mandate (ECF No.

191)).

In December 2013, the Court denied Rodriguez's first motion filed pursuant to 28 U.S.C.

§ 2255. (ECF No. 205), and in October 2014, the Second Circuit dismissed the ensuing appeal.

(Mandate (ECF No. 213)). In January 2014, the Court denied Cedeno's first § 2255 motion (ECF

No. 207), and in August 2014, the Second Circuit dismissed Cedeno's appeal. (Mandate (ECF

No. 212)). Both Rodriguez's and Cedeno's first § 2255 motion involved accusations of

ineffective assistance of counsel by their respective trial counsel—neither defendant raised the

vagueness challenge to 18 U.S.C. § 924(c)(3)(B), which is the crux of their second motions now

before the Court. *See infra*.

---

[1] Pursuant to the Second Circuit decision in *United States v. Whitely*, 529 F.3d 150 (2d Cir. 2008), the Court did not impose a sentence on Count 7. (*See* Judgment at 2, *Rafael Rodriguez v. United States*, 07 CR 387 (CM) (S.D.N.Y. Apr. 28, 2009) (ECF No. 157). The *Whitley* Court had held that, "the plain language of § 924(c)(1)(A) forbids the imposition of its mandatory minimum sentence when [the] defendant [is] already subject to another greater mandatory minimum sentence ... under any other provision of law." The defendant in *Whitley* was subject to both a ten-year mandatory minimum sentence on one count of discharging a firearm under § 924(c)(1)(A)(iii) and a fifteen-year mandatory minimum sentence on one count of being an armed career criminal under § 924(e). *Whitley*, 529 F.3d at 152. The Court of Appeals interpreted the statute to mean that the defendant was exempt from the mandatory minimum sentence under § 924(c) because § 924(e) imposed a greater mandatory minimum sentence. *Id.* at 153. Accordingly, this Court applied *Whitely* to Rodriguez's convictions on Counts Seven and Eight.

However, *Whitley's* holding has since been overruled by the Supreme Court in *Abbott v. United States*, 526 U.S. 8, 131 S.Ct. 18 (2010). In *Abbott*, the Supreme Court held that a defendant convicted under § 924(c) "is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction." 131 S.Ct. at 23. Instead, the Supreme Court interpreted the "except clause" as exempting a defendant from § 924(c) only when "another provision of law directed to conduct proscribed by § 924(c)" imposed a greater mandatory minimum sentence. *Id.* For example, a defendant who was convicted of carrying, brandishing, and discharging a firearm during a violent crime would be subject to a mandatory minimum sentence of ten years imprisonment, and not twenty-two years as a result of "stack[ing]" the three § 924(c)(1)(A) violations. *Id.* Thus, *Whitley* is no longer good law. *See United States v. Tejada*, 631 F.3d 614, 618 (2d Cir.2011) (*Abbott* "effectively abrogated" *Whitley*.).)

In June 2016, the defendants each filed a "*Johnson* placeholder petition,"[2] asking the Court to vacate their firearms convictions—Rodriguez on Counts Seven and Eight, and Cedeno on Count Eight—both men arguing that their § 924(c) convictions should be vacated because neither kidnapping nor Hobbs Act robbery are a "crime of violence" under the force clause or risk-of-force clause of § 924(c).

Although the petitions were presumptively improper as a second and successive motion to vacate pursuant to Section 2255, the Court accepted briefing from the parties; however, the Court ultimately stayed defendants' motions pending a ruling on motions each defendant filed in the Second Circuit for permission to file a second and successive habeas petition pursuant to § 2255(h). The Second Circuit has now granted Rodriguez and Cedeno leave to file a second § 2255 motion. (Dkt. 271).

Accordingly, Rodriguez's and Cedeno's second § 2255 motions are properly before the court.

<u>The Proof at Trial</u>

The Government's proof at trial showed that Rodriguez, Cedeno, and Angel Diaz (the only three defendants not to plead guilty who were charged in the S4 Indictment) participated with numerous others in a months-long conspiracy to rob and kidnap the drivers of tractor-trailers in order to take and sell their cargo. In particular, although numerous conspirators played

---

[2] In June 2016, The Office of the Federal Public Defender filed a petition on behalf of Rodriguez and Cedeno, pursuant to 28 U.S.C. § 2255. The Federal Defender filed the petition in response to the Court's "*Johnson* Standing Orders." *See* Standing Orders, In re: Motion for Sentencing Reductions Under 28 U.S.C. § 2255 In Light of *Johnson v. United States*, 15 Misc. 373 (LAP) (S.D.N.Y. Nov. 18, 2015), and 16 Misc. 217 (CM) (S.D.N.Y. June 8, 2016). The Court issued the orders to preserve the rights of defendants like petitioner, who might have grounds to attack their convictions based on the Supreme Court's decision in *United States v. Johnson*, 135 S. Ct. 2551 (2015). In *Johnson*, the Supreme Court held that the "residual clause" defining a "crime of violence" in the Armed Career Criminal Act ("ACCA") contained in 18 U.S.C.§ 924(e)(2)(B)(ii) was unconstitutionally "void for vagueness" under the Fifth Amendment's Due Process Clause. (ACCA's residual clause included in its definition of a crime of violence the phrase "or otherwise involves conduct that presents a serious potential risk of physical injury to another."). The *Johnson* holding was made retroactive in *United States v. Welch*, 126 S. Ct. 1257 (2016).

roles in each robbery and kidnapping, Rodriguez, Cedeno, and Angel Diaz were gunmen, brought into the conspiracy by the other participants for the specific purpose of being the ones to burst into the targeted tractor-trailers with guns, subdue and restrain the drivers, and hand control of the captured vehicles over to other conspirators who would drive the vehicles away and empty them. Using two gunmen each time, the conspirators committed a robbery and kidnapping on September 13, 2006 (with Rodriguez and Angel Diaz as gunmen), another on November 13, 2006 (with Rodriguez and Cedeno as gunmen), and another on November 14, 2006 (again, with Rodriguez and Cedeno as gunmen). The conspirators attempted several other robberies and kidnappings during the life of the conspiracy, including a final attempt on January 3, 2007 to rob the driver of a tractor-trailer leaving a warehouse near John F. Kennedy International Airport ("JFK Airport"). Later that day, Rodriguez and another member of the conspiracy were arrested after police officers discovered guns and other robbery and kidnapping tools in a backpack in the trunk of a car in which they were riding.

The Government's evidence included: (1) the testimony of German Cuadrado, Jorge Flores, Saile Parra, and Juan Camacho, each of whom was a cooperating co-conspirator who testified pursuant to a cooperation agreement; (2) the testimony of the truck drivers victimized in each of the three completed robbery-kidnappings; (3) cellular telephone records demonstrating calls between various co-conspirators in connection with the robberies and attempted robberies; (4) cell site location information placing various co-conspirators in the vicinity of the robbery scenes and other relevant locations at the times that relevant events took place; (5) GPS locator information from the hijacked tractor-trailers; and (6) two loaded guns, a face mask, gloves, and plastic ties like those used to restrain the robbery victims, all found in the trunk of a car in which

Rodriguez and another co-conspirator were riding on the day of the final robbery attempt, along with a bulletproof vest that Rodriguez was wearing at the time.

The September 13, 2006 Robbery and Kidnapping

In early September 2006, Cuadrado mentioned the prospect of a perfume truck robbery to Parra, who volunteered that he had a cousin who worked at a perfume company. (Tr. 308-09, 1094-95). Parra arranged a meeting between Cuadrado, Platano, Parra, and Parra's cousin. (Tr. 309, 1098-1100, 1537-38). Parra's cousin described the perfume warehouse where he worked and informed Cuadrado, Platano, and Parra that he was willing and able to notify them when a truck carrying more than one million dollars' worth of perfume was departing. (Tr. 310-11, 1100).

Platano and Cuadrado next turned to finding people who could handle the task of capturing the truck and kidnapping the driver, since, as Cuadrado explained at trial, "neither he nor I were going to do it." (Tr. 312, 790). Cuadrado and Platano were referred to an individual named "Negro Marco," who ultimately proved to be unavailable, but who referred Cuadrado and Platano to Angel Diaz. (Tr. 312-16, 1540-42). Cuadrado and Platano met with Angel Diaz (who went by the name "Peter") in Manhattan and described the job to him, telling him that he would need to find a second person to help him. (Tr. 318-20). Angel Diaz agreed to participate, and introduced Cuadrado and Platano to Rodriguez (who went by the name "Dance"), who also agreed to participate. (Tr. 319-24).

After making trips to scout the perfume warehouse in Blauvelt, New York (Tr. 324-28, 1543-44), the conspirators met there in the afternoon on September 13, 2006 to carry out the robbery and kidnapping. (Tr. 331-32). Present at the scene were Cuadrado, Flores, Rodriguez, Angel Diaz, Victor Diaz, and Platano. (Tr. 332, 1549; GX 1520 (Angel Diaz cell site

information)). Cuadrado communicated by telephone with Parra, who was in telephonic contact with his cousin inside the warehouse. (Tr. 332-33, 1102-04; GX 2005 at 10-11 (phone records)).

Eventually, Parra relayed word from his cousin that a suitable tractor-trailer had just left and was making a pickup at another nearby facility. (Tr. 336, 1105-06, 1550). The conspirators located the truck in the parking lot of that other facility and, after pausing to formulate a plan suitable to the terrain, sprang into action. (Tr. 337-38, 354-55; GX 145C (photo of parking lot)). From a black backpack, Rodriguez and Angel Diaz each took a gun and approached the truck, one from each side. (Tr. 357-64, 1552-53). Rodriguez and Angel Diaz burst into the cabin of the tractor, where the driver and an assistant were sitting. (Tr. 57). Rodriguez and Angel Diaz struck both men in the head with their guns, threw them into the back of the cabin, and bound them with plastic ties. (Tr. 57-62, 111-14; *compare* GX 140 (police sketch of assailant) *to* GX 2-A (booking photo of Angel Diaz)). Angel Diaz then exited, Cuadrado entered, and Cuadrado drove the truck to the vicinity of Camacho's loading dock while Rodriguez sat on top of the two victims in the cabin. (Tr. 366-71). The others followed in separate vehicles. (Tr. 1557).

Upon arriving at the loading dock, the crew was forced to wait by a nearby car dealership until one of Camacho's fellow employees departed for the night. (Tr. 370-71, 799-800, 997-1000, 1557-59; GX 155-A (photo), 1525 (Angel Diaz cell site information)). Eventually, Camacho indicated that the loading dock was empty, and the crew brought the tractor-trailer in and unloaded the perfume from the trailer, holding the two victims in the tractor the entire time. (Tr. 374-80, 806-13, 1561-63). With Angel Diaz and others following him in a separate vehicle, Cuadrado then drove the tractor-trailer to Clifton, New Jersey, where he abandoned it with the victims still bound inside. (Tr. 381-83, 814-15, 1563-65; GX 105-C, 105-E (photos), 1535

(Angel Diaz cell site information)). The group then returned to the loading dock to move the stolen perfume. (Tr. 384-85; GX 1540 (Angel Diaz cell site information)).

Four or five days after the robbery, Platano and Victor Diaz sold the stolen perfume for approximately $80,000 — far less than the conspirators had hoped to obtain. (Tr. 389). Angel Diaz demanded that at least half of that amount be paid to himself and Rodriguez, leaving the other half to be split among the numerous other participants. (Tr. 389-94, 816, 1111, 1569). The others capitulated, but thereafter refused to work with Angel Diaz again. (Tr. 391-94, 490-91).

The November 13, 2006 Robbery and Kidnapping

After the September 13, 2006 robbery, Rodriguez continued to commit and conspire to commit robberies, kidnappings, and other crimes with the rest of the conspirators. (See, *e.g.*, Tr. 397- 421, 1115-22, 1576-79 (theft of unattended perfume truck)).

Moreover, with Angel Diaz no longer welcome, Rodriguez introduced Cedeno (who went by the name "Miguel") to the group as "one of [his] friends" (Tr. 421-22), and Cedeno joined the conspiracy to rob and kidnap truck drivers.

Cedeno's first outings with the group were unsuccessful. On one occasion in October 2006, Cedeno, Rodriguez, Cuadrado, Parra, and Flores followed a tractor-trailer loaded with perfume with the intention of having Rodriguez and Cedeno execute another robbery and kidnapping, but the truck never stopped to give them an opportunity. (Tr. 433-39, 1139-49). On another occasion in October or November 2006, Cedeno, Rodriguez, Cuadrado, Parra, Flores, and Camacho followed a tractor-trailer to a lot with the intention of having Cedeno and Rodriguez subdue the security guard so that Cuadrado could drive off with the tractor-trailer. (Tr. 440-44, 842-45, 1151-55, 1646-52). The group broke into the lot with Cedeno and Rodriguez carrying guns, but they found the trailer to be full only of empty bottles. (Tr. 445-46). On a third

occasion, Cuadrado, Flores, Camacho, Cedeno, Rodriguez, and another individual followed a tractor-trailer to a rest stop in Pennsylvania with the intention of hijacking it, but abandoned the plan upon seeing police at the rest stop. (Tr. 512-17, 851- 55, 1617-24).

The conspirators were finally able to pull off another robbery and kidnapping on November 13, 2006. (Tr. 446). In the afternoon, Cuadrado received a call from one of Platano's associates, who asked for the group's assistance in hijacking a tractor-trailer full of cellphones that he was following from Manhattan into New Jersey. (Tr. 448-50, 1588). Cuadrado informed Rodriguez, Cedeno, Flores, and Parra, and the five men drove until they caught up to Platano's associate and the tractor- trailer on the highway. (Tr. 450-52, 1163-65, 1588-89). The group followed the tractor-trailer until it pulled off into a rest area in Allamuchy Township, New Jersey. (Tr. 453, 1165-66, 1589, 1914; GX 220-D (photo)). At that point, Rodriguez and Cedeno brought out the backpack containing their guns and set off to incapacitate the driver. (Tr. 455-56, 461, 1167, 1591). With their guns drawn, Rodriguez and Cedeno burst into the cabin of the tractor, struck the driver in the head with a gun, restrained him with plastic ties, and forced him to lie down in the sleeper portion of the cabin. (Tr. 1018-22). Cedeno then left the tractor, Cuadrado got in, and, with Rodriguez guarding the driver in the back, Cuadrado drove the tractor-trailer back to the Bronx where he parked it on a side street. (Tr. 461-67, 1167-69, 1593-94).

After parking in the Bronx, Cuadrado inspected the cellphones in the trailer and then he and Rodriguez left to find a purchaser. (Tr. 469, 1170, 1594-95). Flores, Parra, and Cedeno were left behind to guard the truck and the driver. (Tr. 469, 1170, 1595). Parra soon left, however, and Flores and Cedeno decided to watch the truck from their own car, rather than sit in the truck

itself. (Tr. 1174-75, 1598-1600). While they did so, the driver broke free of the plastic ties, started the engine, and escaped with the truck to safety. (Tr. 473-74, 1603-04).

Flores and Cedeno informed Rodriguez who, having separated from Cuadrado for the night, picked Cuadrado back up at Cuadrado's home and drove back to the Bronx to look for the escaped truck, to no avail. (Tr. 471-72, 1604; GX 1605, 1610 (Rodriguez cell site information)).

The November 14, 2006 Robbery and Kidnapping

The crew was back at it the next day. While scouting a perfume warehouse to find a truck for a possible robbery — with the guns on hand, "in case a job would come up" (Tr. 478) — Rodriguez, Cedeno, Cuadrado, Flores, and Parra received a phone call from Platano, who said that he was following a tractor-trailer full of perfume. (Tr. 477-80, 1178, 1607). Cuadrado and the others agreed to join him. (Tr. 480-81).

The group caught up to Platano, Victor Diaz, and another associate on the highway in New Jersey, and joined in following the targeted truck. (Tr. 481-83, 1179-80, 1608). The caravan continued along Interstate 80 into Pennsylvania, where the truck finally pulled off at a truck stop in Pine Grove, Pennsylvania. (Tr. 482-83, 1180-81, 1608, 1950; GX 315-V (photo), GX 1710 (Rodriguez cell site information)).

The conspirators fanned out, communicating with each other by cellphone while they stalked the driver. (Tr. 484-88, 492-93, 1609; GX 2010 at 8 (phone records)). When the driver went inside the truck stop, Rodriguez and Cedeno climbed inside the cabin of the tractor with the backpack of guns and waited for him to return. (Tr. 492-95, 1182-83, 1660). When he did, Rodriguez and Cedeno greeted him by striking him "high above the chest[,] next to the throat" and pointing a gun at his head. (Tr. 1367-69). At the point of a second gun, Rodriguez and

Cedeno then forced the driver into the back of the cabin, made him lie down, bound him with plastic ties, and threw a blanket over his head. (Tr. 1369- 75).

With the driver restrained, Rodriguez summoned Cuadrado to the truck and Cuadrado began driving it eastbound on Interstate 80 towards New York, with Rodriguez and Cedeno inside and the others following in separate vehicles. (Tr. 496-500, 1184, 1610; GX 1720 (Rodriguez cell site information)). Upon discovering that the stolen tractor contained a GPS tracking device, however, Cuadrado, Rodriguez, and Cedeno pulled off into another truck stop, disconnected the trailer from the tractor, drove the tractor approximately 20 miles away, and abandoned it with the driver still inside. (Tr. 498-501, 1184-85, 1613). They then returned to where they had left the trailer of perfume and Platano drove the trailer away using a newly stolen tractor. (Tr. 501-03, 1185, 1614). The group managed to sell the stolen perfume for between approximately $70,000 and $90,000. (Tr. 504- 05).

<u>The Present Motion</u>

Rodriguez and Cedeno ask the Court to vacate their convictions for brandishing a weapon in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 2, in light of the Supreme Court's decision in *United States v. Davis,* 139 S.Ct 2319 (2019).[3]

At the time of Rodriguez and Cedeno's trial, Section 924(c) of Title 18 provided that anyone who used or carried a firearm "during and in relation to any crime of violence or drug trafficking crime" would be subject to specified enhanced penalties. Section 924(c)(3), in turn, defined "crime of violence" as a "felony offense" that either "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," § 924(c)(3)(A) or "that by its nature, involves a substantial risk that physical force against the

---

[3] Rodriguez no longer seems to be challenging his conviction on Count Seven. *See infra* at 17.

person or property of another may be used in the course of committing the offense."
§ 924(c)(3)(B). The first of these definitions is known as the "physical force clause," and the second as the "risk of force clause" or "residual clause."

Now, twelve years after these men were sentenced, the Supreme Court has struck down the residual clause of Section 924(c) as unconstitutionally vague, leaving only the physical force clause to define a "crime of violence." *See United States v. Davis*, 139 S.Ct. 2319 (2019). In *Davis*, the Supreme Court held that Section 924(c)(3)(B)'s risk-of-force clause is unconstitutionally vague, in-light-of *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) and *Johnson v. United States*, 135 S. Ct. 2551 (2015). *Davis*, 139 S. Ct. 2319 at 2325-27, 2336. The *Davis* Court rejected the contention that Section 924(c)(3)(B)'s vagueness concerns could be avoided by applying the statute to a defendant's case-specific conduct with a jury making the requisite findings about the nature of the predicate offense and the attendant risk of physical force being used in its commission. *Id.* at 2334-36. Rather, *Davis* held that the categorical approach applied in which courts "had to disregard how the defendant actually committed his crime" and "imagine the idealized ordinary case of the defendant's crime." *Id.* at 2336 (internal quotation marks and citation omitted).

However, in neither *Davis*, nor *Dimaya*, nor *Johnson* did the Court suggest that the language of the force clause appearing in the statutes under consideration—Section 924(c), Section 16, or the Armed Career Criminal Act, respectively—was suspect.

In the present case, the Government does not challenge defendants' contention that substantive kidnapping is not a crime of violence after *Davis*.[4] Rather, the Government argues

---

[4] In light of the government's concession, for purposes of this Court's analysis, it will assume without deciding what still may be an open question in this Circuit, that kidnapping in violation of 18 U.S.C. § 1201(a) (absent any death-resulting enhancement, which is not present here) is not a crime of violence, and that Hobbs Act robbery is the only viable predicate crime of violence to support defendants' convictions on Counts Seven and Eight. *See United States*

that, even if substantive kidnapping is not a crime of violence, Rodriguez's and Cedeno's

Section 924(c) convictions remains valid, because their convictions were also predicated on

armed robbery, which is a "crime of violence" as defined by the physical force clause of Section

924(c). Indeed, Second Circuit case law both before and after *Davis* is clear that Hobbs Act

robbery is a crime of violence under the physical force clause of Section 924(c). *See United*

*States v. Hill*, 890 F.3d 51, 59 (2d. Cir. 2018); *see also United States v. Walker*, 789 F. App'x

241 (2d Cir. 2019) ("Our prior holding in [*Hill*], that substantive Hobbs Act robbery is a crime of

violence under the elements clause of § 924(c)(3)(A), is unaffected by *Davis, Stokeling*, and

*Barrett* and remains binding on us in this case") (summary order); *United States v. White*, No. 16

Cr. 82 (VEC), 2020 WL 5898680, at *3 (S.D.N.Y. Oct. 5, 2020) ("Although *Hill* was decided

before *Davis*, the Second Circuit has repeatedly reaffirmed the vitality of *Hill* post-*Davis*");

*Morgan v. United States*, No. 12 Cr. 464 (PAC), 2020 WL 1699995, at *3 (S.D.N.Y. Apr. 8,

2020) (acknowledging that *Hill* remains controlling after *Davis*); *Jacques v. United States*, No.

07 Cr. 0844 (JS), 2020 WL 5981655, at *5 (E.D.N.Y. Oct. 8, 2020) ("Hobbs Act robbery

remains a crime of violence under the Elements Clause and may properly serve as a predicate

offense for a Section 924(c) conviction"); *United States v. Medunjanin*, No. 10 Cr. 0019 (BMC),

2020 WL 5912323, at *3 (E.D.N.Y. Oct. 6, 2020) ("By contrast, the 'traditional, elements only,

categorical approach' in § 924(c)'s elements clause was not at issue in *Davis*. . . . Thus, *Davis*

did not impact the Second Circuit's interpretation of 924(c)'s elements clause, as set out in

*United States v. Hill*[.]") (internal citations omitted).

---

v. *Minaya*, 841 Fed.Appx. 301, 304, n.2 (2d Cir 2021) ("Many of our sister circuits have decided that substantive kidnapping in violation of 18 U.S.C. § 1201(a) is not a crime of violence under the force clause, § 924(c)(3)(A). *See, e.g., Knight v. United States*, 936 F.3d 495, 498 (6th Cir. 2019); *United States v. Walker*, 934 F.3d 375, 378-79 (4th Cir. 2019); *United States v. Brazier*, 933 F.3d 796, 800-01 (7th Cir. 2019) (kidnapping "does not categorically satisfy the elements clause" because it "may be accomplished without force, by 'inveigling' or 'decoying' a person without a threat of force, and by holding the person simply by locking him or her in a room, again without threat of violence"). We have not squarely addressed that question yet in a published opinion.").

Thus, the convictions on Counts Seven and Eight will survive defendants' *Davis* challenges only if the count is found to rest on Hobbs Act Robbery—the only possible valid post-*Davis* § 924(c) predicate left in this case.

<u>Count Eight</u>

Considering first Count Eight, the count charging both Rodriguez and Cedeno with brandishing a firearm during a crime of violence; specifically, the "crimes of violence" charged in Count Three (the November 13, 2006 Kidnapping) and Count Six (the November 13, 2006 Hobbs Act Robbery).

At first blush, it would appear that Rodriguez's and Cedeno's firearms conviction remain valid as they appear to be based on the Hobbs Act Robbery charged in Count Six. And, of course, only one valid predicate offense is required to sustain a conviction under Section 924(c). In *United States v. Walker*, 789 F. App'x 241 (2d Cir. 2019), two defendants challenged their Section 924(c) convictions which were, in part, predicated on conspiracy to commit Hobbs Act robbery— a crime that no longer qualified as a crime of violence after the Second Circuit's decision in *United States v. Barrett*, 937 F.3d 126, (2d Cir. 2019). The Second Circuit rejected the defendants' challenge because "the § 924(c) conviction of each defendant rested on convictions for both conspiracy <u>and</u> substantive Hobbs Act robbery as the predicate crimes of violence." *Walker*, 789 F. App'x 241 at 244-5 (emphasis in original) (summary order).

However, in the present case, the jury was instructed that the gun use must have been "during and in relation to a crime of violence," and "kidnapping and robbery qualify," Tr. 2239; and that the gun use must have been in "connection with the commission of a crime of violence, such as robbery **or** kidnapping." Tr. 2274 (emphasis added). Thus, it is unclear whether the jury based its verdict on a valid predicate. The verdict form did nothing to clear up the ambiguity, as

it did not require the jurors to specify upon which predicate they relied. The Government leans on *Walker* for the proposition that a §924(c) conviction may be sustained when it rests on "both conspiracy **and** substantive Hobbs Act Robbery." Govt. Ltr at 6. But that is not the case here, where the jury was instructed in the disjunctive "or" and there was no special verdict clarifying the issue. In contrast, in *Walker*, one defendant pleaded guilty and admitted that he brandished a gun in furtherance of Hobbs Act Robbery. The other defendant was convicted at trial, but at the trial the jury was specifically asked on a verdict sheet whether the gun was brandished in connection with Conspiracy to commit Hobbs Act Robbery, Hobbs Act Robbery or both. The jury specifically found that the gun was brandished in furtherance of <u>both</u>. *United States v. Walker*, 16 CR 327 (RA) Dkt. #202 at 80.

The Government next cites *United States v. White* for the proposition that a § 924(c) conviction will be sustained where the alternative predicate is "supported by a sufficient factual basis in the record, demonstrating that the defendant, in fact, committed the predicate offense." Govt. Ltr at 5, *citing United State v. White* (VEC), 2020 WL 5117973 at *4 (S.D.N.Y August 31, 2020). But *White* is inapposite as applied to Count Eight because the *White* defendants had pleaded guilty and allocated to using a gun during the commission of a robbery. Thus, as in *Walker*, there was no doubt in that case as to the factual predicate for the §924(c).

This case is more similar to *United States v. Biba*, 788 Fed. Appx. 70, 72 (2d Cir. 2019), in which the Second Circuit vacated a §924(c) conviction holding "[E]ven assuming arguendo that attempted Hobbs Act robbery remains a 'crime of violence,' we find the government's argument must fail because Biba did not allocute to the elements of attempted robbery during his guilty pleas." In this case, it is unclear whether the jury based its conviction on Count Eight (the §924(c) count) on a valid predicate of Hobbs Act Robbery. Indeed, having reviewed the facts

presented at trial, (as emphasized and argued by the government), the instructions to the jury and the verdict sheet, it is possible that the jurors found that the gun was brandished in furtherance of kidnapping or "attempted robbery," but not robbery.

Unlike the cases cited by the government, which involved allocutions admitting brandishing a gun in furtherance of Hobbs Act robbery or verdict sheets which specifically found brandishing in furtherance of Hobbs Act robbery, in this case, the victim testified at trial to facts that arguably amounted to kidnapping and *attempted* robbery. The victim told the jury of being struck in the head with a gun, tied up and driven off. The government emphasized the gunpoint abduction, but repeatedly reminded the jury that the planned robbery *failed* because "Karzenowski had gotten away" and "the trailer full of cell phones was gone." Tr. 2045. *See also, e.g.,* Tr. 21, 2046, 2047, 2188.

And the jury charge permitted the jurors to find Rodriguez and Cedeno guilty of robbery if someone "obtained or took *or attempted to obtain or take* property." Tr. 2217 (emphasis added). But *attempted* robbery was never charged in the indictment, either alone or as a "crime of violence." Thus, if the jury convicted on Count Eight because it found defendants' brandished guns in relation to an "*attempt* to obtain or take property," the convictions would be improper. *See, e.g., United States v. McCourty*, 562 F.3d 458, 470 (2d Cir. 2009) ("'The precise manner in which an indictment is drawn cannot be ignored,'" because "a court may not alter or amend the indictment, literally or constructively, once it has been returned by the grand jury. 'An indictment has been constructively amended when the trial evidence or the jury charge operates to broaden the possible bases for conviction from that which appeared in the indictment.' . . . A constructive amendment of an indictment is 'a serious error,' and a *per se* violation of the Fifth Amendment, requiring automatic reversal.") (citations omitted).

Similarly, the jury could not have properly found robbery based on the crew's driving around with the victim and the cell phones. Hobbs Act robbery requires a "taking or obtaining of personal property," 18 U.S.C. § 1951(b)(1), which "requires 'not only the deprivation but also the acquisition of property.' That is, it requires that the victim 'part with' his property." *Sekhar v. United States*, 570 U.S. 729, 734 (2013) (citations omitted). The victim in this case did not "part with" any cell phones, *Sekhar*, 570 U.S. at 734, until a couple were taken to show prospective buyers. And the Government never argued for a conviction on that basis. On the contrary, the Government reminded the jury that the robbery plan *failed*: "Karzenowski had gotten away," and the "trailer full of cell phones was gone." Tr. 2045.

At bottom, it is likely defendants' convictions on Count Eight rest on the predicate crimes of kidnapping, and/or conspiracy to commit Kidnapping and/ or attempted Hobbs Act Robbery. Since neither kidnapping nor conspiracy are "crimes of violence" under the elements clause of § 924(c)(3)(A), and attempted robbery was never charged, meaning it cannot be a basis for the conviction (*See, e.g., McCourty*), the Conviction on Count Eight can no longer stand.

Defendants' motions to set aside their convictions on Count Eight is granted.

Count Seven

In regard to Count Seven, the jury convicted Rodriguez of brandishing a firearm during a crime of violence, in violation of Title 18, United States Code, Section 924(c)— this time, in connection with the "crimes of violence" named in Count One (the Kidnapping Conspiracy), Count Two (Kidnapping committed on September 13, 2006), Count Four (Hobbs Act Robbery Conspiracy), and Count Five (Hobbs Act Robbery committed on September 13, 2006).

Rodriguez in his reply letter effectively abandons his challenge to Count Seven: "Thus, to save Mr. Rodriguez's § 924(c) convictions, the record must show the jury found gun use

regarding the only charged 'crime of violence' that still counts: Hobbs Act robbery. But for one of the § 924(c) convictions [Count Seven], the record shows just the opposite." Rodriguez Reply at 1, ECF Document 277. Rodriguez's abandonment of his challenge to Count Seven is understandable. When Rodriguez filed his § 2255 motion, the Second Circuit had not yet decided *United States v. Hill*, 890 F.3d 51 (2d Cir. 2018) in the wake of *Davis*. In *Hill*, the Second Circuit explained that, using the "categorical" approach, 18 U.S.C. § 1951(b)(1)'s requirement that the defendant commit robbery by means of "actual or threatened force, or violence, or fear of injury" qualifies the crime of robbery in violation of the Hobbs Act as one which has "as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A); *see Hill*, 890 F.3d at 57-60. Thus, after *Hill*, Rodriguez could no longer simply argue that his conviction on Count Seven should be voided because neither Kidnapping nor Hobbs Act robbery were crimes of violence able to sustain a § 924(c) conviction. He would have to show—as he and Cedeno did in connection with Count Eight—that the record fails to definitively show that the jury found gun use in connection with the charged Hobbs Act Robbery. Rodriguez, no doubt, concluded that that was burden he could not meet.

While the same "brandishing of a weapon" instruction the Court gave in connection with Count Eight applied to Count Seven—the jury was told that the brandishing of a weapon must have been in "connection with the commission of a crime of violence, such as robbery **or** kidnapping," Tr. 2274 (emphasis added)—and the verdict sheet did not require the jurors to specify the "crime(s) of violence" they relied on if they were to convict on Count Seven, there is no question from the testimony and other evidence introduced at trial that the jury necessarily had to find that the defendant brandished a firearm during the commission of a completed

robbery; specifically, the Hobbs Act robbery committed on September 13, 2006 (Count Five)—a "crime of violence" that remains a valid predicate post *Davis*.

The evidence at trial overwhelming proved that Rodriguez—working together this time with Angel Diaz as the gun-toting muscle of the crew—burst into the cabin of the targeted tractor trailer, struck the driver and the driver's assistant in the head with his gun, threw the men into the back of the cabin, and bound them with plastic ties. (Tr. 57-62, 111-14). After the driver and his assistant were neutralized, another member of the crew hopped in the cab of the truck and drove it to a loading dock to be unloaded; all while Rodriguez guarded the two victims in the back of the cab. (Tr. 366-71). The crew unloaded the trailer—which was filled with perfume destined for the retail market—then drove the emptied tractor-trailer to Clifton, New Jersey, where they abandoned it with the victims still bound inside. (Tr. 381-83, 814-15, 1563-65. Four or five days after the robbery, the men sold the stolen perfume for approximately $80,000. (Tr. 389). Unlike the unsuccessful, "attempted" Hobbs Act Robbery that was offered as a predicate for Count Eight, the predicate Hobbs Act Robbery for Count Seven was indeed a successful robbery, yielding an $80,000 haul for the crew to divvy up. Thus, in regard to Count Seven, there is a "sufficient factual basis in the record, demonstrating that the defendant, in fact, committed the [valid] predicate offense [of Hobbs Act Robbery]." *See United States v. White*, No. 16 Cr. 82 (VEC), 2020 WL 5117973, at *4 (S.D.N.Y. Aug. 31, 2020).

Rodriguez's motion to set aside his conviction on Count Seven is denied.

Conclusion

Accordingly, Rodriguez and Cedeno will be produced in court on July 13, 2021 at 11:00 a.m., for the purpose of vacating their § 924(c) conviction on Count Eight, and resentencing them on the remaining counts of conviction—which, for Rodriguez, includes Count Seven, even

though the Court did not impose a sentence on that count at the original sentencing.[5] The

Probation Department is directed to prepare a supplemental Presentence Investigation Report by

June 22, 2021. Sentencing submissions by the parties are due by June 29, 2021.

This constitutes the decision and order of the Court.

Dated: May 24, 2021
New York, NY

Colleen McMahon
Senior District Court Judge

---

[5] Ironically, a defendant whose conviction on a particular count is set aside pursuant to *Davis* risks the possibility of receiving a more-harsh sentence when resentenced on the remaining counts of conviction. As the Court stated in *Davis*, "defendants whose § 924(c) convictions are overturned by virtue of today's ruling will not even necessarily receive lighter sentences: As this Court has noted, when a defendant's § 924(c) conviction is invalidated, courts of appeals 'routinely' vacate the defendant's entire sentence on all counts 'so that the district court may increase the sentences for any remaining counts' if such an increase is warranted." *Davis* at 2336, quoting *Dean v. United States*, 137 S. Ct. 1170, 1176 (2017).